# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY R. ESTERS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 3695 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CAROLYN W. COLVIN[1], Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Kimberly Esters seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 423(d)(2), and Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 1382c(a)(3)(A). Ms. Esters asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

## I.
## PROCEDURAL HISTORY

Ms. Esters applied for DIB and SSI on September 22, 2009, alleging that she had become disabled on January 16, 2001, due to asthma and chronic bronchitis. (Administrative Record ("R.") 3, 166-68, 172). Her application was denied initially and upon reconsideration, and Ms. Esters continued pursuit of her claim by filing a timely request for a hearing. An administrative law judge

---

[1] Pursuant to Federal Rules of Civil Procedure 25(d), we have substituted Carolyn W. Colvin for Michael J. Astrue as the appellee.

("ALJ") convened a hearing and, after considering all of the evidence presented, found Ms. Ester not disabled. (R. 135-44). Ms. Esters filed an administrative appeal and was granted a remand of her claim back to the ALJ. (R. 115-117). The same ALJ again found her not disabled. (R. 77-87). Ms. Esters filed another administrative appeal and was, again, successful, and her claim was remanded to a different ALJ. (R. 61-63).

On July 13, 2009, the ALJ convened a hearing at which Ms. Esters, represented by counsel, appeared and testified. In addition, Dr. Fred Fishman testified as a medical expert and Thomas Dunleavy testiifed as a vocational expert. (R. 1253-1336). On January 29, 2010, the ALJ issued a decision finding that Ms. Esters was disabled, but only from January 16, 2001, to May 31, 2002. After May 31, 2002, the ALJ determined that Ms. Esters could perform sedentary work that did not involve climbing ladders, ropes, or scaffolds; kneeling crouching, or crawling; working at height or around hazards; or exposure to irritants like extreme temperatures, humidity, dust, fumes, odors, gases; any more than very little climbing of stairs and ramps. Ms. Esters could only occasionally stoop or reach overhead, and could do very little climbing of ramps and stairs. (R. 34). Despite all these limitations, the ALJ relied on the testimony of the vocational expert to determine that Ms. Esters could still perform jobs that existed in significant numbers in the economy, such as assembler, visual inspector, or cashier. (R. 44-45). The ALL's decision then became the final decision of the Commissioner when the Appeals Council denied Ms. Ester's request for review of on March 8, 2012. (R. 7-9). *See* 20 C.F.R. §§ 404.955; 404.981. Ms. Esters has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

The record in this case is a thirteen-hundred-page stack of often illegible medical records cobbled together in no particular order. To relate, in detail and at length, those medical records would be painstaking and, to some degree, a fool's errand. That's demonstrated by review of Ms. Esters' submissions and the ALJ's decision, which both include the inevitable mistakes and misinterpretations. The Commissioner, perhaps wisely, made no attempt to set forth the medical record. As such, the focus here will be confined to Ms. Esters' arguments and the evidence pertinent to them. Beyond that, suffice it to say that Ms. Esters' has a substantial history of treatment for severe asthma, as well as a history of insulin-controlled diabetes and obesity.

## II.

## ANALYSIS

### A.

Asthma is clearly Ms. Esters' most significant problem. In that regard, she argues that the ALJ was wrong when he determined her condition did not meet or equal the asthma listing in the Listing of Impairments in the Commissioner's regulations. If a claimant's impairment meets or equals the criteria of one of the listings, they are found disabled and the ALJ's analysis is at an end. 20 C.F.R. § 404.1525(a); 20 C.F.R. §404.1520(a)(4)(iii); *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The burden is on Ms. Esters to show that her asthma meets a listing, and she must show that it satisfies all of the various criteria specified in the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

A claimant is to be found disabled due to asthma if there is evidence of asthma attacks:

> in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an

3

evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03B. Section 3.00C defines asthma attacks as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." Ms. Esters' first problem with the ALJ's listing analysis is that he found she met the listing from only January 16, 2001, through May 31, 2002. (R. 29). Ms. Esters contends she met the listing through July 12, 2002.

The evidence supports Ms. Esters' contention. Here are the asthma attacks she suffered during the salient period:

> 1. January 17, 2001– 2 attacks. Ms. Esters had a three-day hospital stay to treat shortness of breath due to apparent allergic reaction. She was treated with bronchodilators and Prednisone. (R. 220-32)
>
> 2. July 13, 2001 – 2 attacks. Ms. Ester was hospitalized for two to three days for asthma exacerbation and bilateral pneumonia. She was treated with bronchodilators and steroids. (R. 233-44).
>
> 3. October 28, 2001 – 1 attack. Ms. Ester was treated in the emergency room for asthma. During the course of seven hours, she received nebulizer treatments and intravenous Solumedrol, a steroid. (R. 245-57).
>
> 4. November 23, 2001 – 2 attacks. Ms. Esters was hospitalized for three to four days due to asthma and chest pain. She was treated with intravenous steroids and nebulizers, and also underwent a cardiac evaluation that yielded normal findings. (R. 258-301)
>
> 5. March 18, 2002 – 1 attack. Ms. Ester spent the evening in the emergency room, receiving asthma treatment that included nebulizers and oral Prednisone. (R. 689-95)

4

> 6. March 25, 2002 – 1 attack. Just a week later, Ms. Esters returned to the emergency room with an asthma attack, and was treated with intravenous steroids, prednisone, and nebulizers. (R. 701-09).

The ALJ properly concluded that these nine attacks over the course of about fourteen months met the requirements of listing 3.03B. (R. 30). She went on to conclude that Ms. Esters did not meet the listings during any twelve-month period subsequent to this. By June 1, 2002, the ALJ found Ms. Esters had improved to the point of not being disabled in view of the decreased severity and frequency of asthma exacerbations. (R. 31).

But it is unclear from the ALJ's decision how the end date of June 1, 2002, was selected. The listings require an evaluation period of at least twelve consecutive months. Beginning July 13, 2001, there was a twelve month period in which Ms. Esters suffered six or seven attacks. (*See Nos. 2-6*). The appropriate end date would, therefore, seem to be July 13, 2002. Accordingly, the ALJ did commit an error by failing to adequately explain how she arrived at her end date given the evidence. She failed to "build a logical bridge" between the evidence to her conclusion, and this case must be remanded. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

Thereafter, in terms of listing-level attacks, Ms. Esters' condition improved somewhat, with her trips to the hospital spread out a bit more:

> 7. August 24, 2002 – 1 attack. Ms. Esters was treated for asthma exacerbation with intravenous steroids, nebulizers, and Prednisone. (R. 310-17). The ALJ found that this was not an attack because Ms. Esters received no intravenous medication. (R. 31). But, the record – which is all but illegible – suggests otherwise, referring to an "IV". (R. 315).

5

8. January 5, 2003 – 1 attack. Ms. Esters received emergency room treatment for three hours with nebulizer and intravenous Solumedrol. (R. 318).

9. June 27, 2003 – two attacks. Ms. Ester spent two to three days in the hospital following an asthma attack. She was treated with nebulizers, steroids, and intravenous Solumedrol. (R. 756). The ALJ did not count this as an attack, claiming the record did not reveal the course of treatment Ms. Esters received. (R. 31).

Thereafter, Ms. Esters enjoyed over a year of decent health. From July 17, 2003, through August 13, 2004, she was able to engage in substantial gainful activity. (R. 28-29). Accordingly, she could not qualify for disability benefits during that time. But Ms. Esters' severe asthma attacks were not over. And she argues that there are at least two listing-level twelve month periods that the ALJ ignored.

The first purportedly runs from April 28, 2008, to April 27, 2009, while the second purportedly runs form September 1, 2008, through:

1. April 28, 2008. Ms. Esters was treated at the emergency room for "difficulty breathing, worse with activity." (R. 1015). She received one nebulizer treatment in the ER and was discharged in stable condition. (R. 1015). Although the ALJ was incorrect to say that the "record does not indicate any treatment was given," the attack did not last one or more days and did not require intensive treatment. While Ms. Esters seems to submit that any level of treatment in an ER qualifies as intensive treatment, the listing contemplates "intensive treatment" comparable to intravenous medication or *prolonged* inhalation therapy. Clearly, a single nebulizer blast does not rise to that level, so this cannot be regarded a listing-level attack.

2. September 1, 2008 – 1 attack. Ms. Esters went to the emergency room with exacerbation of asthma and difficulty breathing. (R. 1011). She was treated with nebulizer, bronchodilators, and had received intravenous medication in route to the hospital. (R. 1011). This, then, was a listing level attack, as the ALJ seemingly found. (R. 32).

3. September 16, 2008. The ALJ did not consider this event (R. 32), but it is not a listing-level attack. Ms. Esters returned to the emergency room with shortness of

6

breath. She received Biaxin, an antibiotic used to treat bacterial infections of the respiratory system. (R. 1010). As with event No. 1, a single dose of an antibiotic – apparently orally, as there is no indication of any intravenous instructions – does not, by its nature, rise to the level of intensive treatment such as intravenous antibiotic administration.

4. September 23, 2008 – 1 attack. As the ALJ apparently determined, this was a listing-level attack. Ms. Esters was treated in the emergency room for exacerbation of her asthma with nebulizers and intravenous Solumedrol. (R. 32, 1056-57).

5. September 26, 2008 – 2 attacks. Ms. Esters returned in short order to the hospital where she was admitted for two to three days. She was treated with intravenous Solumedrol and bronchodilator therapy. (R. 32, 1029-32, 1101-02).

6. August 9, 2009. Ms. Esters sought treatment for mild asthma exacerbation and neck tightness. She was hospitalized overnight – for at least twenty-four hours (R. 1156, 1157) and treated with steroids and nebulizers. (R. 1156). The description of the treatment is sketchy at best – there is no indication how many nebulizer treatments Ms. Esters required or whether steroids were administered intravenously. Adding to that the fact that the doctors described the event as a "mild" exacerbation (R. 1156), the ALJ properly determined it was not a listing level event. (R. 33).

Thus, during the periods Ms. Ester is proposing, she had four listing-level attacks – not six or more. Accordingly, the ALJ did not err in determining she did not meet the listings for this period. That does not mean she was not disabled, of course, as the ALJ had to then continue on through the five-step evaluation. She did so, ultimately determining that Ms. Esters retained the residual functional capacity to perform a limited range of sedentary work.

**B.**

Ms. Esters next argues that the ALJ rendered an improper credibility determination. She focuses on the ALJ discrediting her testimony that she had significant shortness of breath on a daily basis, and had to use her nebulizer three or more times per day. (R. 38). She complains that the ALJ

7

referenced a letter from one of her treating physicians indicating that Ms. Esters was to use her nebulizer as needed. (*Plaintiff's Memorandum of Law*, at 12). The ALJ felt that the record did not support Ms. Esters' allegations that she had to use it three or more times every day. But, according to Ms. Esters, she "needs it three to four times a day at unpredictable intervals." (*Plaintiff's Memorandum of Law*, at 12).

Contrary to the plaintiff's argument, however, the ALJ did not merely say an "as-needed basis" could not be four times a day, she said the medical evidence failed to support the need for that frequent use aside from a few isolated occasions where her condition was exacerbated. (R. 39). The ALJ did not have to accept Ms. Esters' allegation in this regard uncritically, of course. Instead, she properly compared Ms. Esters' testimony to the medical evidence to find she was exaggerating. *Pepper v. Colvin*, 712 F.3d 351, 368-69 (7th Cir. 2013)(ALJ may gauge claimant's testimony against the medical record to assess credibility); *Sienkiewicz v. Barnhart,* 409 F.3d 798, 804 (7th Cir.2005) ("[A] discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration.").

While it is true that Ms. Esters' asthma did become exacerbated form time to time, sometimes to a degree that required a trip to the emergency room, she cites no evidence to show that she required nebulizer use four times daily – at least not until her reply brief[2], and that is too late.

---

[2] In her reply brief, plaintiff cites to three reports over a two-year span – 2007 through 2009 – she claims prove she was using her nebulizer four times every day. (*Plaintiff's Reply*, at 4). These appear to be sporadic incidences as the ALJ said, however, and not a longitudinal portrait of Ms. Ester's nebulizer use which was the allegation the ALJ was assessing. Moreover, the March 22, 2007 report prescribed Zithromax and Prednisone tablets four about four days, and Robitussin cough syrup. (R. 967). There is a notation regarding "Albuterol Every 4 Hrs" but this appears to be only for a brief period – 1-2 days as well, according to the instructions. (R. 969). The September 16, 2008 report indicate that Ms. Esters said she had been using her nebulizer 3-4 times daily (R. 1010), but by September 19th, she had improved and was feeling much
(continued...)

Arguments that are not fully developed until a reply brief are deemed waived. *Bodenstab v. County of Cook,* 569 F.3d 651, 658 (7th Cir.2009); *United States v. Alhalabi,* 443 F.3d 605, 611 (7th Cir.2006). This rule is all the more important in a case like this, where the claimant is claiming there is medical evidence to support her allegations, but that evidence is somewhere in a thirteen-hundred page volume of mostly hand-written and often illegible documents. This is a circumstance where an attorney *must* make it easier for a judge to rule in his or her client's favor, *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613-14 (7th Cir. 2006), and not just assume the judge will sift through the record on the claimant's behalf. That is not the judge's job. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 705 (7th Cir.2010); *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720-21 (7th Cir. 2008); *Dye v. United States*, 360 F.3d 744, 751 (7th Cir. 2004).

Ms. Esters also takes the ALJ to task for noting that she was able to engage in substantial gainful activity while using her nebulizer three to four times a day. She argues that, during the thirteen months she was working, she needed emergency on just one occasion and that thereafter, her condition worsened. (*Plaintiff's Memorandum of Law*, at 12). But the ALJ's point was that, even if Ms. Esters' allegations were true, the use of her nebulizer three to form times per day did not, and would not, interfere with work as she argues it would. As the ALJ said, "either the statement regarding nebulizer treatment three to four times a day is not accurate, or this frequency of nebulizer treatment does not prevent work activity." (R. 39).

---

²(...continued)
better. (R. 1009). The January 23, 2009 report may or may not instruct Ms. Esters to use her nebulizer every four hours, as it is mostly illegible and Ms. Esters does not pinpoint the portion of the report she is referring to. (R. 1008).

Next, Ms. Esters submits that the ALJ put too much stock in her daily activities as proof she could maintain full-time employment. Here, the ALJ did commit a misstep. The ALJ felt that her activities were "not extensive," but not "terribly limited, and [did] not seem to indicate that she cannot perform the minimal demands of sedentary exertion." (R. 43). Under Seventh Circuit precedent, an ALJ's consideration of a claimant's daily activities can be fraught with peril. Although it is appropriate for an ALJ to consider a claimant's daily activities when evaluating credibility, SSR 96–7p, at *3, this must be done with care. *Roddy v. Astrue,* 705 F.3d 631, 639 (7th Cir.2013), for the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy,* 705 F.3d at 639; *Bjornson,* 671 F.3d at 647; *Punzio v. Astrue,* 630 F.3d 704, 712 (7th Cir.2011); *Gentle v. Barnhart,* 430 F.3d 865, 867–68 (7th Cir. 2005).

According to the ALJ's decision, that is what she did here, as she compared Ms. Esters' limited activities to sendentary work. *Cf. Archer v. Astrue*, 2011 WL 720193, *11 (N.D.Ill. 2011)("Given the minefield that ALJs face when, as the regulations and rulings require, they consider a claimant's activities when assessing credibility, *see Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir.2004), it is important to note that the ALJ did not indicate that travel to a foreign country is commensurate with an ability to work. It is, however, inconsistent with a claim that one does nothing and doesn't leave the house.").

Finally, Ms. Esters complains that the ALJ "failed to discuss [her] obesity," which she says "may have exacerbated her conditions." (*Plaintiff's Memorandum of Law*, at 13). Ms. Esters is mistaken. The ALJ *did* discuss her obesity and considered it in arriving at her conclusion that Ms. Esters can perform a limited range of sedentary work. (R. 33, 35, 38, 39-40). Moreover, she offers

10

nothing but speculation that her obesity affected her other conditions, citing to no evidence and, indeed, not even explaining in her brief how that might be the case. Disability benefits are not awarded on the basis of speculation. As such, even if the ALJ had ignored his obesity, any error in doing so would have been harmless. *See Mueller v. Colvin,* 524 Fed.Appx. 282, 286, –––– F.3d ––––, ––––, 2013 WL 1701053, 3–4 (7th Cir.2013); *Prochaska v. Barnhart,* 454 F.3d 731, 737 (7th Cir.2006); *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir.2004).

Moreover, Ms. Esters is unable to cite to any evidence that suggests her obesity is the result of a medical condition. The case she cites, *Barret v. Barhart*, 355 F.3d 1065 (7th Cir. 2004), stated that "if an applicant's obesity is *in fact* remediable, then it is no more a basis for an award of benefits than any other remediable condition would be." 355 F.3d at 1068.[3] Weight issues, unconnected with any other remedial condition is remediable. *Id.*

So, Ms. Esters is able to uncover only one flaw in the ALJ's credibility determination. But, an ALJ's credibility finding need not be perfect, and can be overturned only if it is patently wrong. *Jones v. Astrue,* 623 F.3d 1155, 1162 (7th Cir.2010); *Outlaw v. Astrue,* 412 Fed. Appx. 894, 899 (7th Cir.2011); *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). Demonstrating that a credibility

---

[3] The obesity argument is one that Ms. Esters' counsel appears to employ automatically in any cases in which the claimant is overweight regardless of whether there is any evidence to show their obesity is the result of a medical condition or that it is aggravated by a medical condition and renders the claimant disabled. *See, e.g.*, *Richards v. Astrue*, 370 Fed.Appx. 727, 733 (7th Cir. 2010); *Farrell v. Colvin*, 2013 WL 6081000, *9 (N.D.Ill. 2013); *Gardner v. Colvin*, 2013 WL 4539249, *8 n.3 (S.D.Ind. 2013). That is not only improper, *see* Fed.R.Civ.P. 11, *Fabriko Acquisition Corp. v. Prokos,* 536 F.3d 605, 610 (7th Cir.2008), it is a pointless technique that undercuts the entire presentation. *Cf. Walker v. Abbott Laboratories*, 416 F.3d 641, 643 (7th Cir.2005); *Rehman v. Gonzales*, 441 F.3d 506, 508-09 (7th Cir.2006); *United States v. Mahoney*, 247 F.3d 279, 282 (D.C. Cir. 2001); *Rice v. Nova Biomedical Corp.,* 38 F.3d 908, 918 (7th Cir. 1994); *United States. v. Brocksmith,* 991 F.2d 1363, 1366 (7th Cir.1993); Matthew Kennelly, *Over-Arguing Your Case*, 40 LITIGATION 41 (Winter 2014).

determination is patently wrong is a "high burden." *Turner v. Astrue,* 390 Fed. Appx. 581, 587 (7th Cir. 2010). One flaw – or more – does not render a credibility determination patently wrong, as long as the ALJ provides other valid reasons for her conclusion. *Berger*, 516 F.3d at 546; *Kittelson v. Astrue,* 362 Fed.Appx. 553, 558 (7th Cir.2010). Ms. Esters has not demonstrated the ALJ's credibility finding was patently wrong in this case.

### D.

Ms. Esters also has problems with the reasons the ALJ gave for rejecting the opinions of Drs. Upadyhay and Chudgar. Dr. Upadyhay, who said he had treated Ms. Esters for her "Lifetime"[4], filled out a form from Ms. Esters' attorney in June 2007 in which he said that Ms. Esters had "semisevere" asthma attacks two to three times a month that incapacitated her for two to three days. The attacks were caused by irritants and exercise. (R. 993-94). Her asthma would cause her to miss one day of work each week. (R. 996). He also said that Ms. Esters could not be around aerosols, perfumes, or any airborne irritants. (R. 994).

Ms. Esters argues that the ALJ improperly rejected the doctors opinion because she noted that Ms. Esters was able to perform activities where she was around pulmonary irritants. (*Plaintiff's Memorandum in Support*, at 14). But that's not the only reason the ALJ gave for discrediting Dr. Upadyhay's report. She also said that the doctor's treatment notes did not support his opinion. (R. 41). Dr. Upadyhay's notes indicate he treated Ms. Esters, not for asthma, but for sleep apnea, which he termed a "mild case." (R. 802). There was no indication in his notes that Ms. Esters was *ever*

---

[4] According to the administrative record, the only treatment notes from Dr. Upadyhay are from 2002. (R. 4). But there are no records from 2002. Actually, Dr. Upadyhay saw Ms. Esters on five occasions from March 2004 to January 2005. (R. 797-804; *Plaintiff's Memorandum in Support*, at 4). There is absolutely nothing other than Dr. Upadyhay's hyperbole to suggest he treated her for a "lifetime."

incapacitated by her asthma, let alone on such a frequent basis. (R. 797-804; *Plaintiff's Memorandum in Support*, at 4). That's a valid reason for rejecting a treating physician's opinion. *Schreiber v. Colvin*, 519 Fed.Appx. 951, 958 (7th Cir. 2013); *Schmidt v. Astrue,* 496 F.3d 833, 842–43 (7th Cir. 2007); *Skarbek v. Barnhart*, 390 F.3d 500, 503-04 (7th Cir. 2004). For that matter, so is evidence of an ability to perform activities the treating physician opines a claimant cannot do at all. Tellingly, Ms. Esters is unable to cite to any notes in her reply brief that contradict what the ALJ said. (*Plaintiff's Reply*, at 7).

As for Dr. Chudgar, he, too, completed a questionnaire in June 2007, as well as in April 2004. Ms. Esters argues that the ALJ improperly rejected these opinions: the April 2004 opinion simply because she was not satisfied with the limitation the doctor proposed, and the June 2007 opinion because it had been designed to evaluate diabetes. (*Plaintiff's Memorandum in Support*, at 14). The June 2007 report is, indeed, entitled "Diabetes Mellitus Residual Functional Capacity Questionnaire," and Dr. Chudgar lists as Ms. Esters' only diagnosis "diabetes mellitus." (R. 997). He went on to find that Ms. Esters was significantly limited in all facets by this disease, including being unable to stand, walk, or sit for more than four hours total in an eight-hour day. Presumably, that leaves reclining for the other four hours but the doctor indicated Ms. Esters would not have to lie down during the day. (R. 998, 999). Ms. Esters could not even maintain concentration or deal with any more than low stress situations. (R. 998).

The ALJ determined, correctly, that there was nothing in the record to show that Ms. Esters' diabetes affected her this severely and the doctor offered no explanation for why this might be the case. (R. 41). In the entire record, the plaintiff is able to cite only one occasion when her diabetes was not under control. (*Plaintiff's Memorandum in Support*, at 2-7); (R. 508, 514 (cited at pg. 4 of

Plaintiff's Brief)). The lack of medical evidence to support Dr. Chudgar's June 2007 was an appropriate reason for the ALJ to reject it. A treating physician's opinion is entitled to controlling weight only to the extent it is well-supported and consistent with the medical evidence. *Bates v. Colvin*, – F.3d –, –, 2013 WL 6228317, *5 (7th Cir. 2013); *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007).

The April 2004 report was not limited to an assessment of one impairment's effects and listed diagnoses of asthma, obesity, and diabetes mellitus. (R. 459). The only symptoms Ms. Esters had were coughing and shortness of breath – no pain, fatigue, or dizziness. (R. 459). Still, Dr. Chudgar found Ms. Esters' capacity for work was such that she was disabled. She could sit for no more than 30 minutes at a time, stand for no more than 20, and sit and stand and walk for a total of just six hours in an eight-hour workday. (R. 460). She would miss two days a month from work. (R. 462). Again, the ALJ dismissed the opinion as unexplained and unsupported by any medical evidence. (R. 42). And that's a valid reason for dismissing it. *Bates*, 2013 WL 6228317, *5; *Filus*, 694 F.3d at 869; *Schmidt,* 496 F.3d at 833.

In addition, and significantly, the ALJ also noted that, during this time, Ms. Esters was holding down a full time job, which further undermined the doctor's opinion. (R. 43).[5] While holding down a job is not always proof that a person has the ability to work because the person might be exerting herself beyond her capacity or have an altruistic employer, *see Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995), such occasions are rare, and we must not engage in speculation. There

---

[5] Ms. Esters missed this statement in the ALJ's opinion. She attributed it to the Commissioner and charged the Commissioner with violating the *Chenery* doctrine by supplying post-hoc rationale for the ALJ's conclusion. (*Plaintiff's Reply*, at 6). In this case, it's a charge without any basis.

is no evidence that these factors were at work here, and the ALJ cannot be faulted for pointing out that at the time her doctor said she basically had to lie down for two hours of every eight-hour workday, Ms. Esters was performing work beyond the sedentary level. (R. 1318-19).

**E.**

Finally, Ms. Esters argues that the ALJ erred at step five by failing to include all Ms. Esters' limitations in her residual functional capacity finding. She claims the ALJ had to account for her being off task for 15 percent of every day, 10 absences a year, and the need to take lunch at different times. (*Plaintiff's Memorandum in Support*, at 15). But, as the ALJ did not find these additional limitations credible or supported by medical evidence, there was no need for her to include them in her RFC finding. *Seamon v. Astrue*, 364 Fed.Appx. 243, 248 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Schmidt,* 496 F.3d at 846.

Staying on the topic of the vocational expert, Ms. Esters adds that the vocational expert failed to provide Dictionary of Occupational Titles ("DOT") numbers for jobs she could perform. This argument is baffling. At the hearing, the vocational expert provided DOT numbers for *four* different examples of jobs Ms. Esters can perform. (R. 1239-40). All four are performed at the sedentary level (in the DOT, Strength Level S). http://www.occupationalinfo.org/ 23/237367014.html; http://www.occupationalinfo.org/23/237367046.html; http:// www.occupationalinfo.org/20/209567014.html; http://www.occupationalinfo.org/ 20/205367014.html. Not only is the argument baseless given the administrative record, but it is unsupported by any case law.[6] *See United States v. Useni,* 516 F.3d 634, 658 (7th

---

[6] This appears to be another argument routinely included in counsel's briefs regardless of whether
(continued...)

Cir.2008)(arguments unsupported by pertinent authority are forfeited); *330 West Hubbard Restaurant Corp. v. United States,* 203 F.3d 990, 997 (7th Cir.2000) ("In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority...."). But, in any event, SSR 00–4p does not demand any citation to code numbers and, moreover, the DOT is but one of several sources upon which an ALJ may properly rely in reaching a step five determination. 20 C.F.R. § 404.1566(d).

### CONCLUSION

The plaintiff's motion for remand [Dkt. #14] is GRANTED and this matter is remanded to the Commissioner for further proceedings consistent with this opinion, namely, determination of the proper end date of plaintiff's closed period of disability.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 5/27/14

---

[6](...continued)
it is appropriate and despite the fact that it finds no support in the pertinent authority. *See, e.g., Landing v. Astrue*, 2013 WL 1343864, *13 (N.D.Ind. 2013); *Merritt v. Astrue*, 872 F.Supp.2d 742, 756 (N.D.Ill. 2012); *Seamon v. Astrue*, 2008 WL 3925829, 7 (W.D.Wis. 2008). This approach to brief writing is counter-productive. *See supra* n. 3.